IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 MAR 19 AM 9: 22
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
        DEPUTY

J&J SPORTS PRODUCTIONS, INC., as
Broadcast Licensee of the September 18, 2010
"200: Celebrate and Dominate": Mosley/Mora
Championship Fight Program,
      Plaintiff,

-vs-                Case No. A-13-CA-824-SS

CASITA GUANAJUATO, INC., Individually and
d/b/a La Casita Mexican Restaurant d/b/a La
Casita; and HILDA MORENO, Individually and
d/b/a La Casita Mexican Restaurant d/b/a La
Casita,
      Defendants.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff J&J Sports Productions, Inc.'s Motion for Default Judgment [#9], to which Defendants Casita Guanajuato, Inc. and Hilda Moreno have not responded. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

Plaintiff J&J Sports Productions markets and licenses commercial exhibitions of pay-per-view prizefight events. J&J possessed the proprietary rights to exhibit and sublicense the right to exhibit the September 18, 2010 closed-circuit telecast of "200: Celebrate and Dominate": Mosley/Mora Championship Fight Program, which included undercard or preliminary bouts (the

"Event"). J&J alleges Defendants illegally intercepted and displayed the Event in their establishment without paying the licensing fee to J&J, in violation of the Federal Communications Act of 1934, 47 U.S.C. §§ 553, 605. J&J seeks the maximum statutory damages of $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II), $50,000.00 for a "willful" violation under 47 U.S.C. § 605(e)(3)(C)(ii), attorney's fees and costs, and a permanent injunction enjoining Defendants from ever intercepting or exhibiting an unauthorized program in violation of the Federal Communications Act.

## Analysis

### I.     Motion for Default Judgment—Legal Standard

When a party defaults by failing to appear or defend a claim, the Court may enter a final judgment without conducting a trial on liability. *See* FED. R. CIV. P. 55(b). Obtaining a default judgment is a three-step process, involving (1) default by the defendant, (2) an entry of default, typically by the clerk of court, and (3) the default judgment itself, issued by the court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Judgment cannot be rendered against a defendant unless the defendant has been served with process, or has otherwise appeared or waived service of process. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). A default by the defendant operates as an admission of the plaintiff's well-pleaded factual allegations. *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002).

### II.    Application

As relevant to this case, the Communications Act combats piracy of television signals by prohibiting the unauthorized interception and broadcast of satellite or cable transmissions. 47 U.S.C. §§ 553, 605. The Communications Act is a strict liability statute. To establish liability under the Communications Act, J&J must establish (1) the Event was shown in Defendants' establishment,

and (2) the exhibition was not authorized by J&J. *See KingVision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999) (finding a bar showed a preliminary bout required judgment in favor of plaintiff); *see also Joe Hand Promotions, Inc. v. Macias*, No. H-11-1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012) ("The FCA is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission.").

Accepting J&J's factual allegations as true, J&J has established it was the exclusive licensee of the Event. J&J has further established the Event was displayed in Defendants' establishment, and Defendants were not authorized by J&J to show the Event. The Court therefore finds Defendants violated 47 U.S.C. §§ 553 and 605 by exhibiting, without authorization, the closed-circuit telecast of "200: Celebrate and Dominate": Mosley/Mora Championship Fight Program, including undercard or preliminary bouts, on September 18, 2010. The record further reflects Defendants were served on September 30, 2013, but they have failed to appear or defend themselves in this matter. The Clerk entered default on March 14, 2014. [#11]. J&J is therefore entitled to a default judgment, and the only remaining issue is the amount of damages.

A.   **Statutory Damages**

The Communications Act allows the aggrieved party to elect to recover either its actual damages plus the violator's profits attributable to the violation, or statutory damages of at least $1,000.00 but not more than $10,000.00, as the court considers just. 47 U.S.C. § 605(e)(3)(C)(I). J&J has elected to seek statutory damages, and requests the maximum amount of $10,000.00. The Court finds the maximum statutory damage amount to be a just award in this case. Defendants could have licensed the Event and shown the fight in their establishment, but did not do so. J&J's actual damages would be difficult, if not impossible, to prove. As a starting point, J&J lost both potential

customers and potential licensing revenue when Defendants illegally broadcast the Event. Pirate broadcasters also threaten the vitality of the entire pay-per-view industry, including J&J, because at least some businesses are unwilling to compete with the pirates by paying licensing fees. Congress specifically amended the Communications Act to address the problem of satellite and cable piracy, stiffening the penalties and expanding standing to sue in order to thwart the piracy it deemed a threat to the long-term viability of the industry. *United States v. Harrell*, 983 F.2d 36, 39–40 (5th Cir. 1993) (citing 1988 U.S. Code Cong. & Admin. News 5577, 5657–58). Congress felt an award of $10,000.00 would prove sufficient to deter unauthorized broadcasts, and the Court finds $10,000.00 is a just amount in this case.

**B.     Willful Violation Damages**

J&J also seeks additional damages because the Communications Act allows a court to increase an award of damages by up to $100,000.00 for each violation "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The willfulness of Defendants' violation is established by J&J's allegations, taken as true, which indicate an unauthorized commercial establishment can only receive a broadcast of the Event through some wrongful action, such as using an unauthorized decoder or satellite access card, or moving an authorized cable box from its authorized location (such as a personal residence) to the commercial establishment. Defendants' intent to benefit financially is also apparent from the record. Defendants broadcasted the Event in their place of business to approximately nine patrons. Accordingly, the Court finds Defendants' violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

The amount of "willful" damages is left to the Court's discretion, though the award cannot exceed $100,000.00 for any single violation. J&J requests five times the amount of statutory damages, or $50,000.00. The Court finds a total damages award of $60,000 to be excessive in this case. The commercial licensing fee for the Event is based on seating in the establishment showing the Event; any establishment seating 100 or fewer patrons would be charged the minimum rate of $1,600.00. Mot. Def. Judg. [#9-1], Ex. A-3. J&J's eye witness to the broadcast estimated the capacity of Defendants' establishment to be sixty people. Defendants would likely have paid the minimum rate to license the broadcast. The Court finds an additional award of $6,000.00 is sufficient to hold Defendants accountable and discourage commercial establishments from committing similar violations. A total damages award of $16,000.00 equates to *ten times* the legitimate licensing cost. Such an award should provide an adequate disincentive for would-be future violators, and is in line with this Court's prior treatment of similar offenders. *See J&J Sports Productions, Inc. v. Raygon*, No. A-11-CA-936-SS, slip op. at 5–7 (W.D. Tex. Nov. 1, 2012) (order granting summary judgment); *J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, No. A-08-CA-691-SS, slip op. at 6–7 (W.D. Tex. April 17, 2009) (order granting summary judgment).

C.   **Attorney's Fees and Costs**

J&J also requests an award of attorney's fees and costs. The Court is required to award reasonable attorney's fees to an aggrieved party who prevails under the Communications Act. 47 U.S.C. § 605(e)(3)(B)(iii). An award equal to one-third of the recovery—$5,280.00 in this case—is reasonable for cases such as this, and is frequently the measure of attorney's fees used in Communications Act cases by federal courts in Texas. The Court declines to make a contingent

award for post-judgment or appellate attorney's fees, but will entertain such a request if it becomes necessary in the future. The Court also awards J&J such other reasonable costs as it has incurred.

**D.     Injunction**

J&J finally requests an injunction prohibiting Defendants from violating the Communications Act in the future. The Court finds such an injunction would serve no purpose or function not already provided by the statute itself, and therefore declines to issue an injunction.

### Conclusion

Accordingly,

IT IS ORDERED that Plaintiff J&J Sports Productions, Inc.'s Motion for Default Judgment [#9] is GRANTED;

IT IS FURTHER ORDERED that the Plaintiff is awarded statutory damages in the amount of $10,000.00, and an additional award of damages for a willful violation in the amount of $6,000.00. Plaintiff is thus awarded a total of SIXTEEN THOUSAND AND 00/100 DOLLARS ($16,000.00), plus post-judgment interest at the rate of .12 percent per annum calculated from the date of this order;

IT IS FURTHER ORDERED that the Plaintiff is awarded reasonable attorney's fees in the amount of FIVE THOUSAND TWO-HUNDRED EIGHTY AND 00/100 DOLLARS ($5,280.00) and its costs;

IT IS FINALLY ORDERED that Plaintiff's request for a permanent injunction is DENIED.

SIGNED this the 19th day of March 2014.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE